IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRENDA L. LANE, | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No. 7:22CV00279 |
| HEATHER O. GREER, M.D. | ) |
| and | ) |
| CARILION CLINIC | ) |
| and | ) |
| CARILION MEDICAL CENTER (d/b/a Carilion Roanoke Memorial Hospital, Carilion Clinic OB/GYN-Botetourt Co, and Carilion Clinic OB/GYN-Roanoke CI) | ) |
| and | ) |
| CARILION HEALTHCARE CORPORATION (d/b/a Carilion Obstetrics & Gynecology-Roanoke and Carilion Clinic OB/GYN -Roanoke CI) | ) |
|     Defendants. | ) |

**COMPLAINT**

Brenda L. Lane, plaintiff, files her Complaint against Heather O. Greer, M.D., Carilion Clinic, Carilion Medical Center (d/b/a Carilion Roanoke Memorial Hospital, Carilion Clinic OB/GYN-Botetourt Co and Carilion Clinic OB/GYN-Roanoke CI), and Carilion Healthcare Corporation (d/b/a Carilion Obstetrics & Gynecology-Roanoke and Carilion Clinic OB/GYN-Roanoke CI), and in support thereof, states as follows:

JURISDICTION

1. Plaintiff is a resident of Princeton, West Virginia.

2. Defendants are healthcare providers who were transacting business in Roanoke (Roanoke City), Virginia at all times relevant to this action.

3. This is a civil action for medical negligence where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332.

## VENUE

5. Carilion is a corporation and resident of this judicial district.

6. A substantial part of the events and omissions giving rise to this action occurred in this judicial district.

7. The Court has venue of this action pursuant to 28 U.S.C. § 1391.

## CARILION CLINIC, ITS EMPLOYEES AND VICARIOUS LIABILITY

8. Carilion Clinic (hereinafter "Carilion) does business under many trade names including, but not limited to, Carilion Roanoke Memorial Hospital, Carilion Clinic OB/GYN-Botetourt Co, Carilion Clinic OB/GYN-Roanoke CI, Carilion Clinic, Carilion Obstetrics & Gynecology-Roanoke and Carilion Clinic OB/GYN-Roanoke CI.

9. Heather O. Greer, M.D. is an employee of Carilion and the other named defendants.

10. On or about June 19, 2020, while treating Ms. Lane, Carilion and the other named defendants, acted by and through their employees including, but not limited to, Heather O. Greer, M.D. (hereafter "Dr. Greer").

11. On or about June 19, 2020, while treating Ms. Lane, Dr. Greer acted in the course and scope of her employment as an employee of Carilion and the other named defendants.



12. On or about June 19, 2020, while treating Ms. Lane, Dr. Greer was performing the business of the other named defendants.

13. On or about June 19, 2020, while treating Ms. Lane, Carilion and the other named defendants are vicariously responsible for the actions and omissions of its employees including, but not limited to, Dr. Greer.

<u>DUTY OF CARILION AND ITS EMPLOYEES TO MS. LANE</u>

14. On or about June 19, 2020, Ms. Lane was a patient of Carilion and its employees.

15. On or about June 19, 2020, while treating Ms. Lane, Carilion and its employees owed Ms. Lane the standard of care of acting with the degree of skill and diligence practiced by a reasonably prudent practitioner in her field of practice or specialty in this Commonwealth.

<u>FACTS</u>

16. On June 19, 2020, plaintiff presented to Carilion Roanoke Memorial Hospital for a scheduled robotic assisted total laparoscopic hysterectomy and bilateral salpingectomy to be performed by Dr. Greer.

17. During the abdominal portion of the procedure, the umbilicus was infiltrated with local anesthetic, incised, and followed by direct entry with an 8 mm nonbladed optical robotic trocar containing a 5 mm laparoscope. This was placed under direct visualization.

18. Bright red blood was noted on the trocar obturator upon trocar placement. The obturator was withdrawn and the laparoscope replaced with continued bright red blood. The robotic q-tip was used to clean the trocar cannula with continued bleeding.



19. Plaintiff became hypotensive within 60 seconds.

20. The trocar remained in place and gyn, oncology, vascular surgery, and massive transfusion protocol was called. Anesthesia was aware of the concern for vascular injury and ancillary support was mobilized.

21. While consultants were notified, Dr. Greer made a vertical midline infraumbilical incision extending from the retained umbilical trocar. Dr. Greer applied direct manual pressure to the midline retroperitoneum posterior to the umbilicus. Dr. Shannon Armbruster (gynecological oncologist) arrived and extended the vertical incision in a cephalad fashion. She also assisted with manual pressure. Dr. Emily Faulks with trauma surgery arrived due to the massive transfusion protocol. She assisted with hemorrhage control until Dr. Thomas Conlee, a vascular surgeon, arrived to assist.

22. A massive transfusion protocol was taking place when Dr. Conlee arrived in the operating room. Drs. Faulk and Greer were both present and holding manual pressure on the abdominal cavity with minimal exposure. As the anesthesiologist was resuscitating plaintiff with blood products and gaining IV and arterial venous access, Dr. Conlee scrubbed in and opened the midline incision for further exposure. A Bookwalter retractor was used and exposed plaintiff's abdominal contents. There was obvious bright red blood (active) bleeding coming from the retroperitoneum on the right side. The bowel was mobilized to the left side to expose the retroperitoneum. Dr. Conlee (with the assistance of Dr. Swanson another vascular surgeon) dissected down to the proximal right common iliac artery. The anterior common iliac artery injury was oversewn with a running 5-0 Prolene. Once clamps were removed, back bleeding from the posterior aspect of the artery was noted and another running 5-0 Prolene was placed in the posterior aspect of the vessel. Once this was performed, the clamps were opened and hemostasis was achieved.



23. Further inspection showed the tract of the injury went through the transverse mesocolon and the small bowel mesentery. These areas were made hemostatic with clips and silk suture. Further inspection was done to the right lower extremity. In the right iliac artery there was a poor pulse distally to the repair. To get further exposure proximally and distally on the iliac artery, the anterior arterial wall repair was opened and showed a significant intimal injury and thrombosis to the segment of the vessel.

24. An interposition graft was needed due to the extent of the vessel injury. All injured portions of the segment of the artery was transected and removed, which was approximately 3 cm. in length. A Fogarty catheter was passed distally and retrieved the case of the thrombus. Upon encountering significant back bleeding, an interposition 8 mm Dacron graft was sewed in an end-to-end fashion proximally with a 4-0 Prolene. The graft was then pulled to length and sewed distally end-to-end with a 4-0 Prolene. Once this was completed, there was good hemostasis at the anastomosis and a palpable femoral pulse on the right side. The retroperitoneum was further inspected. Diffuse oozing was present. 5000 units of heparin was given at this point to ensure adequate anticoagulation. The rents/tears of the mesentery were oversewn with Vicryl suture and surgical hemostasis was achieved.

25. Inspection of the uterus also showed a perforation from Dr. Greer's instrumentation preoperatively. This injury was over sewn with a figure-of-eight Vicryl suture. The remaining portion of the abdomen was explored again and all surgical bleeding appeared to be stopped.

26. The providers present decided to temporarily close the abdomen with an ABThera device. The bowel appeared to be viable and it was decided to pack 1 lap sponge in the right retroperitoneum over the retroperitoneal closure, which was closed with a 2-0 Vicryl to cover the graft. Surgiflo was also placed down the right retroperitoneum because of slow



oozing. The ABThera was placed and good seal and the abdominal wall was obtained and there was a symmetrical posterior tibial signals at the feet.

27. During this procedure to repair the injuries caused by Dr. Greer, plaintiff's estimated blood loss was 2000 mL. She required 2,826 cc of packed red blood cells, 1,711 cc fresh frozen plasma, 250 cc of albumin, 260 cc of platelets, and 4,400 cc of crystalloid.

28. Plaintiff was taken to the recovery room for further monitoring and maintained intubation for a second look surgery the following day.

29. The next day, June 20, 2020, plaintiff was taken back to the OR for a second look laparotomy for removal of ABThera and the intentionally retained laparotomy pad, abdominal exploration, total abdominal hysterectomy, bilateral salpingectomy, and abdominal wall closure performed by David Iglesias, MD and assisted by defendant Dr. Greer. The repaired areas of mesentery appeared hemostatic and the bowel appeared well-perfused. The bowel was run in its entirety from the terminal ileum to the ligament of Treitz and no other injuries were noted. Dr. Conlee then inspected the interposition bypass of the injured right common iliac artery and this appeared to be hemostatic and healing well. The hysterectomy and bilateral salpingectomy were then completed and the abdominal wall was closed.

30. Plaintiff was discharged home on June 24, 2020.

31. Since being discharged from Carilion Roanoke Memorial Hospital, plaintiff has had vascular follow up appointments and testing.

32. Plaintiff was not able to return to work until August of 2020, and then not on a full time basis.

33. Plaintiff has suffered tremendously, physically and financially, due to the negligence of defendants.



NEGLIGENCE OF CARILION AND ITS EMPLOYEES AND ITS CAUSATION

34. The defendants and their employees deviated from the standard of care during the June 19, 2020 surgery on Ms. Lane.

35. The defendants and their employees violated the duties that they owed Ms. Lane during the June 19, 2020 surgery on Ms. Lane.

36. The defendants were negligent and deviated from the standard of care in the following respects:

   a. Failing to employ a reasonable amount of attention and skill in caring for and operating on the plaintiff;

   b. Utilizing improper technique in accessing the plaintiff's abdomen for the surgical procedure;

   c. Employing excessive and unnecessary force when utilizing the trocar to access the plaintiff's abdomen;

   d. Negligently locating the insertion point of the trocar during the plaintiff's surgical procedure;

   e. Utilizing an improper and negligent insertion angle for trocar;

   f. Failing to observe and recognize the tissues, structures, etc. provided by the optical trocar used to gain access to the plaintiff's abdomen; and

   g. Failing to exercise or possess the degree of care and skill required of reasonably prudent obstetrician/gynecologist under similar circumstances.

37. As a proximate result of the negligence of and violation of duties by the defendants and their employees, Ms. Lane's was injured during the June 19, 2020 surgery.

38. If the defendants and their employees had complied with the standard of care and abided by their duties, Ms. Lane would not have been injured thereby avoiding her injuries and outcome.

39. As a direct result of the defendants' negligence, Ms. Lane was required to undergo additional life-saving procedures the effects of which have caused, or are causing and



will cause bodily injuries that greatly affect her health for her lifetime; physical pain and mental anguish; disfigurement; deformity; humiliation; embarrassment; inconvenience; and medical expenses.

40. Ms. Lane seeks to be fairly compensated to the fullest extent permitted for her injuries and damages caused by the negligence of Carilion and its employees.

## JURY REQUEST

41. Ms. Lane requests trial by jury on all issues.

## VIRGINIA CODE § 8.01-20.1 CERTIFICATION

42. Ms. Lane complied with Virginia Code § 8.01-20.1 before requesting service of process on Carilion and its employees.

## AD DAMNUM

WHEREFORE, Brenda L. Lane, by counsel, moves the Court for judgment against defendants Heather O. Greer, M.D., Carilion Clinic, Carilion Medical Center (d/b/a Carilion Roanoke Memorial Hospital, Carilion Clinic OB/GYN-Botetourt Co, and Carilion Clinic OB/GYN-Roanoke CI), Carilion Healthcare Corporation (d/b/a Carilion Obstetrics & Gynecology-Roanoke and Carilion Clinic-OB/GYN-Roanoke CI), for a sum of money that will fully and fairly compensate her for past, present, and future damages caused by the negligence of Carilion and its employees, along with her taxable costs and interest on these amounts from June 19, 2020.

BRENDA L. LANE

By  s/ T. Daniel Frith III
Counsel



T. Daniel Frith III, Esquire (VSB No. 22065)
Thomas D. Frith IV, Esquire (VSB No. 90058)
FRITH & ELLERMAN LAW FIRM, PC

P. O. Box 8248
Roanoke, VA  24014
Telephone:	(540) 985-0098
Facsimile:	(540) 985-9198
dfrith@frithlawfirm.com
bfrith@frithlawfirm.com

*Counsel for Plaintiff*

